Yale v. Allenstown                    CV-96-333-B    03/18/97

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Tammy Yale**

   **v.**                                         Civil No. 96-333-B

**Town of Allenstown
and Ernest L. Castle, IV**


MEMORANDUM AND ORDER

Tammy Yale, a former part-time police officer for the Town of Allenstown, brought this action against Allenstown and Allenstown Police Sergeant Ernest Castle. She asserts claims for: (1) sexual discrimination (Count I), sexual harassment (Count II), and retaliation (Count III), in violation of Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000 et seq.; (2) unlawful sexual discrimination in violation of Yale's Fourteenth Amendment rights to due process and equal protection (Count IV); (3) intentional infliction of emotional distress (Count V); and (4) assault (Count VI). Defendants have moved to dismiss Counts IV, V and VI for failure to state a claim. I deny the motions for the reasons that follow.


I. STANDARD OF REVIEW

When considering a motion to dismiss for failure to state a claim, I accept the complaint's well-pleaded factual allegations

as true and then determine whether the allegations are sufficient, under any theory, to state a claim for relief. Armstrong v. Jefferson Smurfit Corp., 30 F.3d 11, 12 (1st Cir. 1994). Neither bald assertions nor legal conclusions enjoy the presumption of truth. United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). I will, however, draw all reasonable inferences in plaintiff's favor. Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994).

## II.  BACKGROUND

Tammy Yale was employed by the Allenstown Police Department as a part-time police officer from August 1, 1994 until April 25, 1995. Ernest Castle, an Allenstown police sergeant, was appointed to serve as Yale's field training officer. This arrangement required Yale to work with Castle on the same shifts. From the outset, Yale alleges, Castle repeatedly made sexual advances toward her comprised of vulgar remarks, sexual innuendo and non-consensual touching. He allegedly engaged in these activities while on duty and despite Yale's repeated rejection of his advances. He also allegedly made persistent harassing phone

2

calls to her while they were off-duty.

Castle also allegedly retaliated against Yale for rejecting his advances. Yale claims that Castle spread rumors that she was cheating on him and that she would return from vacation pregnant by another police officer. Castle's purpose, according to Yale, was to humiliate and upset her in order to prevent her from being hired as a full-time officer or to pressure her into resigning from the force.

Castle administered an unannounced written exam to Yale when she returned from vacation in the spring of 1995. As Yale worked on the exam, Castle allegedly stood approximately five feet behind her and drew his firearm in violation of department policy. This led Yale to believe that she was about to be shot. In response, Yale filed a complaint with the Chief of Police informing him about both the gun incident and Castle's persistent sexual harassment.

Yale was suspended the day after she filed her complaint. The Chairman of the Board of Selectmen later informed her that she had been suspended because her allegations had resulted in turmoil within the department.

Yale also alleges that the town subsequently rejected her application for a full-time position and instead hired a lesser qualified male candidate. At the time, she was informed by the town that it would consider hiring a full-time officer from within the district, so long as it was not her. Yale notes that she was the only female officer employed by the force during the term of her employment.

## III. DISCUSSION

### A. Count IV

The Magistrate Judge permitted Yale to amend Count IV after defendants filed their motion to dismiss to expressly plead that defendants violated her Fourteenth Amendment right to equal protection. In light of this amendment, defendants' claim that Count IV does not sufficiently plead a violation of federal law is moot.

### B. Counts V and VI - New Hampshire's Workers Compensation Statute

Defendants next contend that Counts V and VI, which only assert claims against Castle, are barred by the exclusivity

provision in New Hampshire's workers compensation statute. N.H. Rev. Sate. Ann. 281-A:8 (Supp. 1995). I disagree. The exclusivity provision does not bar intentional tort claims against co-employees. Thompson v. Forest, 136 N.H. 215, 219 (1992). Moreover, when a plaintiff properly pleads an intentional infliction of emotional distress or assault claim against a co-employee, the plaintiff need not expressly allege that injury was substantially certain to result from the defendant's intentional conduct. Id. Accordingly, the workers compensation statute does not bar plaintiff's claims against Castle.

## C.    Intentional Infliction of Emotional Distress

Castle next argues that Count V, alleging intentional infliction of emotional distress, should be dismissed because Yale failed to sufficiently allege that Castle's conduct was extreme and outrageous.

To maintain a claim of intentional infliction of emotional distress, Yale must establish that the defendant "by extreme and outrageous conduct intentionally and recklessly cause[d] severe emotional distress [to her]." Morancy v. Morancy, 134 N.H. 493,

495-496 (1991)(quoting Restatement (Second) of Torts § 46 (1965)).

Yale's complaint sets out sufficient facts to support a finding that Castle's conduct went "beyond all possible bounds of decency, and [would] be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts, § 46 cmt. d (1965); accord Jarvis v. Prudential Ins. Co., 122 N.H. 648, 652 (1982). She alleges that Castle was her field training officer, with whom she was required to work when she was on duty. Castle repeatedly took advantage of this situation to harass her and make sexual advances toward her through vulgar remarks, sexual innuendo, and touching Yale without her consent. Because she rejected these advances, Castle made disparaging remarks about her with the alleged intention of either preventing her from advancing to a full-time officer position in the department or forcing her to resign from the force. These allegations go beyond those "mere indignities, annoyances, or petty oppressions that one may expect to encounter in one's daily life  and that cannot be redressed by [an action for intentional infliction of emotional distress]." Godfrey v. Perkin-Elmer

6

<u>Corp.</u>, 794 F. Supp. 1179, 1189 (D.N.H. 1992).  Thus, defendant's reasoning does not support a motion to dismiss Count V.

**D.   <u>Assault</u>**

Castle also challenges the sufficiency of Yale's assault claim in Count VI by arguing that: (1) the complaint fails to allege that Yale suffered bodily injury as a result of the assault; (2) Yale's fear that she would be shot when Castle drew his weapon was unreasonable under the circumstances; and (3) Yale's claim that Castle engaged in unprivileged sexual touching is not sufficiently egregious.  I reject each of these arguments.

Castle's first argument fails because assault does not require proof that bodily harm resulted from defendant's conduct. <u>Beach v. Hancock</u>, 27 N.H. 223 (1853); Restatement (Second) of Torts § 21(1) cmt. c (1965).  His second argument is similarly flawed because an assault requires only that (1) the defendant must have intended to cause harmful or offensive contact to the plaintiff, and (2) the plaintiff must have been put in imminent apprehension of such contact.  Restatement (Second) of Torts § 21(1).  The complaint in this case sufficiently pleads both elements to survive a motion to dismiss.  Finally, Yale's claim

7

that Castle reportedly engaged in unprivileged sexual touching also is sufficiently alleged to support a claim for either assault or battery. Therefore, I deny Castle's motion to dismiss Count VI.

## IV.   <u>CONCLUSION</u>

Defendant Allenstown's motion to dismiss Count IV (document no. 6) and defendant Castle's motion to dismiss Counts IV, V, and VI (document no. 7) are denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

March 18, 1997

cc:  Jennifer Rood, Esq.
     Glenn R. Milner, Esq.

8